## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Peter Okezie Kalu, Jr.,                                          Civil No. 15-112 (SRN/JJK)

        Plaintiff,

v.

Brooklyn Park Police/Federation,                      **REPORT AND**
Officer Schmidtke #53, Sergeant                       **RECOMMENDATION**
Lehmann #140, And unknown Brooklyn
Park Police Department/Federation
employees and Officers, 5200 85th
Ave. N., Brooklyn Park, MN 55443,

        Defendants.

---

Peter Okezie Kalu, Jr., General Delivery, Minneapolis, MN 55440, Plaintiff *pro se*.

Ryan M. Zipf, Esq., League of Minnesota Cities, counsel for Defendants.

---

JEFFREY J. KEYES, United States Magistrate Judge

## INTRODUCTION

The plaintiff Peter Okezie Kalu, Jr. ("Kalu"), brings this case under 42

U.S.C. § 1983, alleging that the defendants violated his constitutional rights.  The

defendants have moved to dismiss this case on several grounds, including lack

of jurisdiction, insufficient service of process as to some defendants, and failure

to state a claim.  (Doc. No. 13, Defs.' Mot. to Dismiss; Doc. No. 15, Defs.' Mem.

in Supp. of Mot. to Dismiss ("Defs.' Mem.").)  Kalu originally did not respond to

the motion to dismiss, at which point this Court required the defendants to make

additional efforts to personally serve Kalu with the motion and supporting papers. (Doc. No. 20.)  After the Court ordered the defendants to make those additional efforts, through their counsel, the defendants attempted several times to serve the motion and supporting papers on Kalu, but were initially unsuccessful.  (Doc. Nos. 21 & 23.)  Eventually, Kalu reengaged in this proceeding (Doc. No. 27), and has now responded to the motion to dismiss (Doc. No. 32, Pl.'s Resp. in Opp'n to Mot. to Dismiss ("Pl.'s Opp'n"), and filed a motion for preliminary injunction (Doc. No. 33, Pl.'s Mot. for Preliminary Injunction ("Pl.'s Injunctive Mot.")).  This Court held a hearing on the motions on September 3, 2015.  Kalu did not appear at the hearing despite the Court holding the hearing open for several minutes after its scheduled starting time.  (Doc. No. 40.)

The district court has referred the motion to dismiss and Kalu's motion for a preliminary injunction to this Court, under 28 U.S.C. § 636 and Local Rule 72.1, for a report and recommendation.  Based on the record before the Court, and for the reasons discussed below, this Court recommends that the defendants' motion to dismiss be granted, that Kalu's motion for a preliminary injunction be denied, and that this case be dismissed.

## BACKGROUND

Kalu's allegations in this case can be summarized as follows.  He asserts: that Officer Schmidtke and Sergeant Lehmann stopped his vehicle without probable cause and harassed him; that Officer Schmidtke removed $4,000 without documenting its retrieval when he impounded Kalu's vehicle; and that

Kalu was arrested for trespassing and subjected to derogatory comments about his race when he went to the Brooklyn Park Police Station attempting to retrieve his $4,000.  These incidents allegedly caused Kalu to become homeless because he needed the $4,000 that was taken from him to pay rent.  Kalu also asserts that he suffered such emotional distress that his mental instability caused him to threaten the life of a state court judge, leading to his civil commitment for a six-month period.  (Doc. No. 4, Am. Compl. ¶¶ 1–4.)

He alleges that the defendants' conduct in these matters violated his Fourteenth Amendment Due Process rights.  (Am. Compl. 5–6, Count I.)  He also asserts that the defendants violated his right to be free from unreasonable searches and seizures under the Fourth Amendment in several ways.  (*See id.* at 6–8, Count II (alleging unconstitutional traffic stop and seizure of money from the vehicle), Count III (alleging false arrest), Count IV (alleging a failure to intervene in the conduct causing other violations of his rights).)  He claims that the defendants conspired to deprive him of his constitutional rights.  (*Id.* at 8–9, Count V.)  Finally, he claims that the Brooklyn Park Police Department is required to indemnify the individual officers he has sued in this case.  (*Id.* at 9–10, Count VI.)  Kalu seeks to recover "compensatory damages and all applicable fees, as well as punitive damages against the Defendant Officers in their individual capacities[.]"  (*Id.* at 10 (prayer for relief).)

## DISCUSSION

## I.   Defendants' Motion to Dismiss

3

In their motion to dismiss, the defendants raise several grounds on which this case should be dismissed.  First, they argue that this case should be dismissed under the *Rooker-Feldman*[1] doctrine because Kalu is attempting, through this lawsuit, to essentially appeal a state court judgment.  (Def.'s Mem. 6–7.)  Second, they contend that Kalu's claims are barred by the doctrines of res judicata and collateral estoppel.  (*Id.* at 7–11.)  Third, they contend that Kalu's claims against the Brooklyn Park Police Officers and the City of Brooklyn Park fail because Kalu has not alleged any actionable claim under *Monnell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).  (*Id.* at 12–13.)  Fourth, the defendants argue that Sergeant Lehmann is entitled to qualified immunity on Kalu's unlawful arrest claims because he had arguable probable cause to arrest Kalu for trespassing.  (*Id.* at 13–15.)  Fifth, the defendants assert that Kalu's pleadings fail to state a claim against any defendant for failure to intervene. (*Id.* at 15–17.)  And finally, the defendants assert that Kalu has not alleged a plausible conspiracy. (*Id.* at 17–18.)

## A.   *Rooker-Feldman*

### 1.   Law

Under Rule 12(b)(1), a party may move to dismiss a claim against it for lack of subject-matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  Such a motion may

---

[1]     The *Rooker-Feldman* doctrine takes its names from two Supreme Court cases: *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983); and *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923).

include a challenge to a complaint on its face or a "factual attack" based on matters outside the pleadings. *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990). In a challenge to the face of the complaint, the Court reviews only the pleadings, and the nonmoving party receives the same protections as it would in defending a motion for failure to state a claim. *Id.*

Under the *Rooker-Feldman* doctrine, federal district courts lack subject-matter jurisdiction in actions seeking review of state court judgments. *Skit Int'l, Ltd. v. DAC Technologies of Arkansas, Inc.*, 487 F.3d 1154, 1157 (8th Cir. 2007). "[I]f a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court, and seeks relief from a state court judgment based on that decision, *Rooker-Feldman* bars subject matter jurisdiction in federal district court." *Riehm v. Engelking*, 538 F.3d 952, 965 (8th Cir. 2008). For the federal district court to be divested of subject-matter jurisdiction under the *Rooker-Feldman* doctrine, the federal plaintiff's claim need not involve a straightforward appeal of an adverse state-court judgment; the doctrine also bars subject-matter jurisdiction where the plaintiff's claims seek to indirectly undermine state court decisions as the two are "inextricably intertwined." *See Lemonds v. St. Louis County*, 222 F.3d 488, 492–93 (8th Cir. 2000). Federal claims are inextricably intertwined with a state court judgment if they "succeed[] only to the extent that the state court wrongly decided the issue before it." *Id.* at 493 (quoting *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 25 (1987) (Marshall, J., concurring)).

However, the doctrine does not divest the federal district courts of

jurisdiction whenever the plaintiff failed to prevail in a state-court action prior to

bringing a federal lawsuit.  As the Eighth Circuit Court of Appeals has explained:

> A district court is not deprived of jurisdiction over every case in which
> a plaintiff seeks a result different from the one it obtained in state
> court. . . . Rather, *Rooker-Feldman* is implicated in that subset of
> cases where the losing party in a state court action subsequently
> complains about that judgment and seeks review and rejection of it.

*Skit Int'l*, 487 F.3d at 1157.  Thus, the doctrine is a narrow one that does not

"override or supplant preclusion," and allows independent claims to proceed,

even those that reject a state court's previous decision.  *See Exxon Mobil Corp.*

*v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284, 293 (2005).

### 2.    Analysis

Here, the defendants raise a factual challenge to the Court's subject-

matter jurisdiction.  In support of their motion, the defendants have presented

materials beyond the pleadings for the Court's consideration.  Consistent with a

factual analysis under Rule 12(b)(1), the Court has considered those materials,

which it describes below.

In May 2013, Kalu sued the City of Brooklyn Park for $4,000.  (Doc.

No. 16, Aff. of Ryan M. Zipf ("Zipf Aff.") ¶ 3, Ex. 2.)  In his statement of claim and

summons in conciliation court, Kalu alleged:

> I was pulled over by a [B]rooklyn Park police officer who go [sic] by
> the name Schmidtke was the officer who pulled me over.  [H]e
> claimed I did something wrong but I know he lied about that.  He
> cited me for no license and insurance.  He told me to leave the car.

> He did not check my properties in the car before he let the Tow Guy
> in my car.  His mistake led to my $4,000.00 missing.

(*Id.*)  The conciliation court judge found that Kalu had not proven his case and ruled against him.  (Zipf Aff. ¶ 2, Ex. 1 at 2.)   Kalu appealed that decision to Hennepin County District Court.  (*Id.*)  Kalu later failed to appear for a trial set in his district court case, and he missed a subsequent deadline to contact the state court as well.  (*Id.*)  As a result, the court dismissed Kalu's claim and entered a judgment of dismissal.  (*Id.*)  Kalu moved to vacate the judgment several months later, explaining that he was in mental health treatment and incarcerated at Ramsey County Jail when he missed the court's deadlines.  (*Id.* at 2–3.)

In addressing Kalu's motion to vacate the judgment, the state district court reviewed a squad car video that documented the traffic stop.  The court concluded that Officer Schmidtke stopped Kalu for failing to signal and failing to wear a seatbelt.  The court also found that Officer Schmidtke told Kalu his car would be towed because Kalu did not have a valid driver's license,  was driving without insurance, and he had an accumulation of unpaid tickets.  When Kalu exited his vehicle, the court found, he told Officer Schmidtke that he had $4,000 in cash in the vehicle, and Schmidtke asked him to remove the $4,000.  (*Id.* at 3.) The court found that Kalu then retrieved some personal belongings from his vehicle, but he told Officer Schmidtke that he was leaving the cash in the vehicle so that the officer would be taking his private property.  Officer Schmidtke again asked Kalu to remove the cash from the vehicle, and Kalu walked away from the

vehicle.  The tow truck driver arrived and Officer Schmidtke searched the vehicle.

The court also concluded that the traffic stop video did not show the officer

finding any money or removing any property from the vehicle.  As the tow truck

driver began to load the vehicle, Kalu complained to Officer Schmidtke about the

seizure of his cash.  Schmidtke again told him that he should retrieve the $4,000

from his car if there was cash inside the vehicle, and during the ensuing

conversation, Officer Schmidtke never prevented Kalu from accessing the

vehicle.  (*Id.* at 4.)  Based on these facts, the court concluded that Kalu "failed to

show that he possesses a reasonable claim on the merits[.]"  (*Id.* at 5.)  In a

written memorandum incorporated in its order, the court further explained that the

squad car "video undermines any reasonable basis for [Kalu's] claim[, and]

offer[ed] no evidence to support the existence, let alone the alleged theft, of the

purported cash."  (*Id.* at 7.)

Kalu's claims regarding the traffic stop and Officer Schmidtke's alleged

seizure of his $4,000 are barred by the *Rooker-Feldman* doctrine.  In his

Amended Complaint, Kalu alleges that Officer Schmidtke violated his Fourth

Amendment rights by stopping his vehicle without probable cause.  (Am. Compl.

¶ 1.)  Kalu had raised an identical claim in his conciliation-court case, alleging

that Officer Schmidtke pulled him over and claimed that Kalu "did something

wrong," but "lied about that."  (Zipf Aff. ¶ 3, Ex. 2.)  The state court plainly found

that there was no merit to this assertion when it determined that "Officer

Schmidtke of the Brooklyn Park Police Department stopped Plaintiff for failing to

signal properly and failing to wear a seatbelt." (*Id.* ¶ 2, Ex. 1 at 3.) This claim is therefore inextricably intertwined with Kalu's Fourth Amendment claim in this § 1983 proceeding; Kalu was a losing party in a state court action and now complains about that judgment, seeking review and rejection of it. Thus, this claim falls within the narrow range of cases in which the *Rooker-Feldman* doctrine divests this Court of subject-matter jurisdiction and it should be dismissed without prejudice.

Similarly, within his Amended Complaint, Kalu complains about Officer Schmidtke's alleged refusal to allow him access to his car to retrieve $4,000 from the vehicle, failure to inventory property in the vehicle, and alleged arbitrary seizure of the $4,000 to punish Kalu for unpaid fines. (Am. Compl. ¶ 2.) Kalu does not clearly allege which constitutional right this conduct violated. Regardless of the label Kalu places on this claim, this Court has no jurisdiction to consider it because it is inextricably intertwined with the prior decision of the Hennepin County District Court. The state court concluded that there was no merit to Kalu's claims about the $4,000 in cash allegedly in his vehicle. As noted above, the court explained that a squad car "video undermines any reasonable basis for [Kalu's] claim[, and that Kalu] offer[ed] no evidence to support the existence, let alone the alleged theft, of the purported cash." (Zipf Aff. ¶ 2, Ex. 1 at 7.) Kalu's complaint in this case that Officer Schmidtke's conduct allegedly violated his constitutional rights (*see* Am. Compl. 5–6, Count I (asserting Fourth and Fourteenth Amendment claims based on Schmidtke's actions)), seeks

review and rejection of the Hennepin County District Court's judgment. Accordingly, the *Rooker-Feldman* doctrine divests this Court of subject-matter jurisdiction over this claim and it should be dismissed without prejudice.

The defendants do not appear to argue that any other claims in this case are barred by the *Rooker-Feldman* doctrine.  In the section of their memorandum addressing this basis for dismissal, they do not discuss Kalu's claim that Sergeant Lehmann wrongfully arrested him for trespass; that unidentified members of the Brooklyn Park Police Department, who were present at the time of his arrest, violated his constitutional rights by failing to intervene to prevent his arrest; or that various officers conspired violate his constitutional rights.

## B.   Res Judicata and Collateral Estoppel

The defendants also contend that Kalu's claims relating to the traffic stop and the $4,000 he alleges went missing from his vehicle are barred by the doctrines of res judicata and collateral estoppel.  (Defs.' Mem. 8–11.)  Because the Court has concluded that it does not have subject-matter jurisdiction under the *Rooker-Feldman* doctrine, it will not address whether these claims are barred by res judicata and collateral estoppel.  Nor will the Court consider whether Kalu's other claims are barred by these doctrines because it has determined that they should all be dismissed for other reasons, which it describes below.

## C.   Municipal Liability under *Monnell*

In their memorandum, the defendants argue that "[Kalu] only asserted claims against Sergeant Lehmann and Officer Schmidtke in their official

10

capacities and did not allege individual capacity claims," such that all that remains in the case are claims against those officers' employer.  (Defs.' Mem. 12.)  However, in his Amended Complaint Kalu has included what appears to this court to be a sufficient express statement that he is suing both Sergeant Lehmann and Officer Schmidtke in their individual capacities.  (Am. Compl. 10.)  In his prayer for relief, Kalu states that he is seeking "punitive damages against the Defendant Officers in their individual capacities[.]"  (*Id.*)  Although Kalu does not use the "Defendant Officers[ ]" specific names, he includes this statement in his prayer for relief, and couches it in the language of punitive damages, construing the pleadings liberally in light of Kalu's pro se status, this Court will not recommend dismissing all claims against Sergeant Lehmann and Officer Schmidtke on the grounds that Kalu failed to make an express statement that he is suing them in their individual capacities.

However, Kalu's claims against the Brooklyn Park Police Department should still be dismissed because he has failed to allege facts sufficient to show that the police department can be held liable under *Monell*.  *Monell v. N.Y. Dep't of Social Servs.*, 436 U .S. 658, 690–92 (1978)).  Under a *Monell* claim, section 1983 liability may attach to a municipality "if the violation resulted from (1) an 'official municipal policy,' (2) an unofficial 'custom,' or (3) a deliberately indifferent failure to train or supervise."  *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1214 (8th Cir. 2013) (citations omitted) (quoting *Monell*, 436 U.S. at 690–91).  Nowhere in his Amended Complaint did Kalu plead any facts regarding a

municipal policy, custom, or practice that caused a violation of his constitutional rights. Instead, Kalu asserts that the Brooklyn Park Police Department is liable for the actions of its officers because it is their employer.[2] But, "'a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents' on a respondeat superior theory of liability." *Parrish v. Ball*, 594 F.3d 993, 997 (8th Cir. 2010) (quoting *Monnell*, 436 U.S. at 694).

Because he has not stated a plausible *Monnell* claim, Kalu's claims against the Brooklyn Park Police Department should be dismissed.

### D.   Qualified Immunity

As noted above, in their motion to dismiss the claims against Sergeant Lehmann, the defendants contend that Sergeant Lehmann had at least arguable probable cause to arrest Kalu for trespassing. (Defs.' Mem. 14–15.) Thus, they argue that Sergeant Lehmann is entitled to qualified immunity. A motion to dismiss based on qualified immunity requires the court to "view[] the allegations in the complaint in the light most favorable to the plaintiff." *Hafley v. Lohman*, 90 F.3d 264, 266 (8th Cir. 1996). "[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the objective legal reasonableness of the actions, assessed in

---

[2]      (Am. Compl. 6, Count I; *id.* at 7, Count II; *id.* at 7–8, Count III; *id.* at 8, Count IV; *id.* at 9, Count V.)

light of the legal rules that were clearly established at the time it was taken."

*Wilson v. Layne*, 526 U.S. 603, 614 (1999) (quotations omitted).

### 1.   Whether to Convert the Motion to Dismiss to a Motion for Summary Judgment.

The defendants have styled their motion as one to dismiss, or in the alternative, for summary judgment, and their argument concerning Sergeant Lehmann's arguable probable cause to arrest Kalu is based on matters outside the pleadings.  Namely the defendants rely on Sergeant Lehmann's police report regarding the arrest for trespass.  (Defs.' Mem. 13–15; Zipf Aff. ¶ 4, Ex. 3.) "'Rule 12(b)(6) motions are not automatically converted into motions for summary judgment simply because one party submits additional matters in support of or [in] opposition to the motion.'"  *Casazza v. Kiser*, 313 F.3d 414, 417 (8th Cir. 2002) (quoting *Missouri ex rel. Nixon v. Coeur D'Alene Tribe*, 164 F.3d 1102, 1107 (8th Cir.1999)) (alteration in original).  A court has wide discretion in deciding whether to consider matters outside the pleadings on motions to dismiss.  *See* Fed. R. Civ. P. 12(d) (giving the court considering a motion to dismiss discretion to exclude matters outside the pleadings); *Moubry ex. rel. Moubry v. Indep. Sch. Dist. No. 696 (ELY)*, 951 F. Supp. 867, 890 n.17 (D. Minn. 1996) (citing *Skyberg v. United Food and Commercial Workers Int'l Union*, 5 F.3d 297, 302 n.2 (8th Cir. 1993)).  Before a court converts a motion to dismiss for failure to state a claim to a motion for summary judgment, the court is required to provide notice that it will consider matters outside the pleadings.  *See Court v.*

*Hall County, Neb.*, 725 F.2d 1170, 1174 (8th Cir. 1984).  As one district court has put it, the rule requiring such notice serves the primary purpose of protecting a plaintiff against "summary judgment by ambush."  *Bostic v. AT & T V.I.*, 166 F. Supp. 2d 350, 354–55 (D.V.I. 2001).

Here, neither this Court nor the District Court informed Kalu that the defendants' motion would be treated as a motion for summary judgment. Moreover, this case is at an early stage; discovery has not yet commenced. Accordingly, in determining whether Kalu has stated a claim for unlawful arrest, this Court will not consider matters outside the pleadings and will address the defendants' motion according to the standards of Rule 12(b)(6).[3]

To prevail on qualified-immunity grounds at the motion-to-dismiss stage of the proceedings, "defendants must show that they are entitled to qualified immunity on the face of the complaint."  *Bradford v. Huckabee*, 394 F.3d 1012, 1015 (1982).

### 2.    Sufficiency of the Allegations

---

[3]    As a result of not converting the motion to dismiss into a motion for summary judgment, the Court will not consider the defendants' arguments that Sergeant Lehmann had probable cause based on the fact that "Kalu remained at the police department and disrupted the Department's ability to provide service to other customers," nor that "Sergeant Lehmann directed Kalu to leave the building, but he refused to leave."  (Defs.' Mem. 15.)  The facts relating to this argument are not in the Amended Complaint, but are found in Sergeant Lehmann's police report.  (Zipf Aff. ¶ 4, Ex. 3.)

The specific allegations relating to Kalu's arrest for trespassing include the following.  On May 4, 2013, Kalu went to the Brooklyn Park Police Station to recover the $4,000 he alleges Officer Schmidtke removed from his car.  (Am. Compl. ¶ 3.)  Kalu then asserts: "I was Arrested for trespassing and was placed in jail until I posted a $50.00 bail[.]"  (*Id.*)  After he had been arrested, he alleges that the "Arresting officer where [sic] making fun of me.  I asked how can I get arrested in a public place, that was when one of the arresting officers told me that I should take my ass back to Africa where I belonged."  (*Id.*)   That same officer made additional offensive comments. (*Id.*)  Kalu bases his Fourth Amendment "false arrest" claim on these allegations, asserting that he was "unlawfully detained . . . without justification and without probable cause."  (*Id.* at 7.)

An arrest without a warrant is permissible under the Fourth Amendment if it is supported by probable cause.  *Fisher v. Wal-Mart Stores, Inc.*, 619 F.3d 811, 816 (8th Cir. 2010).  "An officer has probable cause to make a warrantless arrest when the facts and circumstances are sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense."  *Id.* To commit the offense of trespass under Minnesota law, "[a] person is guilty of a misdemeanor if the person intentionally . . . trespasses on the premises of another and, without claim of right, refuses to depart from the premises on demand of the lawful possessor."  Minn. Stat. § 609.605, subd. 1(b)(3).

Here, Kalu has said virtually nothing about the circumstances that led up to his arrest.  With respect to the circumstances that would show he is entitled to

15

relief, he merely says that he went to the station to discuss the $4,000 and was arrested for trespass.  Without making reference to any of the circumstances that preceded that arrest, the Court cannot make any determination regarding the existence of probable cause or arguable probable cause.  Thus the Court cannot determine whether Sergeant Lehmann is entitled to qualified immunity.

But the absence of a basis on which to determine whether Sergeant Lehmann is entitled to qualified immunity does not save Kalu's "false arrest" claim.  The lack of information Kalu provides in his Amended Complaint renders this claim insufficiently pled.  There are no facts from which the Court could even begin to draw inferences in Kalu's favor.[4]  Because Kalu has alleged no facts from which it can be inferred that Sergeant Lehmann violated his constitutional rights in arresting him for trespass, this Court concludes that he has failed to state a claim claim for wrongful arrest in violation of the Fourth Amendment.

Kalu alleges that after he was arrested, he questioned whether he could be arrested for trespass in a public place.  Thus, it appears Kalu may believe it was unlawful to arrest him for trespass because the police station is open to the public.  However, Minnesota's trespass law also applies to government facilities, such as a police station.  *See State v. Occhino*, 572 N.W.2d 316, 319 (Minn. Ct.

---

[4]     Kalu's allegations about what other officers said to him after Sergeant Lehmann placed him under arrest are irrelevant to a determination whether he was wrongfully arrested in violation of his Fourth Amendment rights.  This is so because whether an officer had probable cause to make an arrest is judged by what the officer knew at the time of the arrest.

App. 1997) (explaining that "[a] disruptive and hostile individual [who lawfully entered a government facility had] no legal right to remain on the premises after being ordered to leave" and could be arrested for trespass). Accordingly, Kalu's allegations regarding the public nature of the facility where Sergeant Lehman arrested him do not save his claim from dismissal for failure to state a claim.

Consistent with the foregoing, the Court concludes that Kalu has failed to state a claim upon which relief can be granted against Sergeant Lehmann for false arrest.

### E.    Failure to Intervene and Conspiracy

The defendants have also moved to dismiss Kalu's failure-to-intervene claim and his conspiracy claim on the ground that he has failed state a claim upon which relief can be granted. (Defs.' Mem. 15–18.) Under Federal Rule of Civil Procedure 12(b)(6) party may move to dismiss a claim for failure to state a claim upon which relief can be granted. To survive a motion to dismiss under Rule 12(b)(6), a complaint need not contain detailed factual allegations, but it must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). On a motion to dismiss under Rule 12(b)(6), courts must accept the plaintiff's factual allegations as true and construe all inferences in the plaintiff's favor, but need not accept a plaintiff's

17

legal conclusions.  *Retro Television Network, Inc. v. Luken Commc'ns, LLC*, 696

F.3d 766, 768–69 (8th Cir. 2012).

### 1.    Failure to Intervene

With respect to his "failure to intervene" claim, liberally construing the

Amended Complaint, Kalu appears to be asserting that the "Brooklyn Park Police

Department/Federation," is liable under a supervisor liability theory.  (Am.

Compl. 8, Count IV.)  Kalu claims that the police department[5] is liable as the

employer of various unspecified defendants who, acting in the scope of their

employment, and despite having a reasonable chance to prevent a violation of

his constitutional rights when he was arrested for trespass, chose instead to do

nothing.  (*Id.*)  This type of vicarious liability on a theory of respondeat superior is

not available in a lawsuit brought under § 1983.  *Parrish v. Ball*, 594 F.3d 993,

1001 (8th Cir. 2010) ("Because vicarious liability is inapplicable to . . . § 1983

suits, a plaintiff must plead that each Government-official defendant, through the

official's own individual actions, has violated the Constitution.") (quoting *Iqbal*,

556 U.S. at 676); *Parrish*, 594 F.3d at 997 ("'[A] local government may not be

---

[5]    To the extent that Kalu attempts to sue the Brooklyn Park Police
Federation, a police union, the Court notes that Kalu has not proven that he has
served the union with a Summons and Complaint.  Any claims he intended to
assert against the union should be dismissed under Rule 12(b)(5).  Moreover,
Kalu's pleadings do not allege any at by the union that would state a claim upon
which relief could be granted, making any claims against the union subject to
dismissal under Rule 12(b)(6).

sued under § 1983 for an injury inflicted solely by its employees or agents' on a respondeat superior theory of liability") (quoting *Monnell*, 436 U.S. at 694).  To the extent Kalu is attempting to allege that the named defendants' supervisors are liable, he has not alleged any facts showing that a supervisor participated in or had direct responsibility for the alleged unconstitutional conduct, or that any of the defendants' supervisors knew of, but was indifferent to unconstitutional conduct.  *McDowell v. Jones*, 990 F.2d 433, 435 (8th Cir. 1993).

In his memorandum in opposition to the motion to dismiss, Kalu asserts that the Brooklyn Park Police Department failed to train its officers on proper procedures for searching motor vehicles or inventorying their contents.  (Doc. No. 32, Pl.'s Resp. in Opp'n to Mot. to Dismiss ("Pl.'s Resp.") 9 ("The City of Brooklyn park and Brooklyn Park police department/federation [sic] failed to train their employees on how to conduct a proper search of a Motor [sic] vehicle and properly record/conduct an inventory of what the citizens have in their car.").)  But Kalu never mentions a claim that the Brooklyn Park Police Department failed to train its officers in his Amended Complaint.  Because he cannot amend his pleadings through an argument in a brief, *Morgan Distrib. Co., Inc. v. Unidynamic Corp.*, 868 F.2d 992, 995 (8th Cir. 1989) ("[I]t is axiomatic that a complaint may

not be amended by the briefs in opposition to a motion to dismiss"), the Court concludes that Kalu has failed to state any failure-to-train claim.[6]

With respect to Kalu's designation of the claim as one of a "failure to intervene," such a claim typically asserts that one officer failed to prevent harm caused by another officer's violation of a plaintiff's constitutional right not to be subjected to an excessive use of force. *See Putnam v. Gerloff*, 639 F.2d 415, 423 (8th Cir. 1981). Under this theory "[a]n officer will . . . be liable for failing to intervene to halt the unconstitutional use of force if (1) the officer observed or had reason to know that excessive force would be or was being used, and (2) the officer had both the opportunity and the means to prevent the harm from occurring." *Maeberry v. City of St. Paul*, Civ. No. 09-1216, 2010 WL 2814285, at *6 (D. Minn. July 16, 2010) (internal quotations omitted) (quoting *Nance v. Sammis*, 586 F.3d 604, 612 (8th Cir. 2009)). Kalu has not articulated any facts that would plausibly allege any of the defendants would be liable under such a theory. Kalu argues that officers at the Brooklyn Park Police Station had a period of time in which they knew that "Sergeant Lehmann wanted to arrest [him, and] they had plenty of time to intervene but instead refused to." (Pl.'s Resp. 15.) Kalu's Amended Complaint contains no factual allegations from which the Court

---

[6]   Moreover, Kalu's attempt to assert a failure-to-train claim against the Brooklyn Park Police Department regarding its vehicle inventory policies and procedures is merely another effort to reverse the state court's determination, in his conciliation court case, that his claim regarding the $4,000 he allegedly left in his car was meritless.

could reasonably infer that other officers present at the station when Kalu was arrested for trespass were aware that Sergeant Lehmann planned to arrest Kalu in violation of his constitutional rights.  Even setting aside the fact that Kalu does not provide the factual context for this argument in his Amended Complaint, Kalu has not pointed to any binding case law, and this Court is aware of none, that imposes a duty on an officer to intervene to prevent constitutional violations other than the use of excessive force.[7]

Under any theory he may be asserting, Kalu's "failure to intervene" claim should be dismissed.

## 2.    Conspiracy

Kalu included a "conspiracy" claim in his Amended Complaint.  To state a claim for conspiracy under 42 U.S.C. § 1983, a plaintiff must plead facts showing: (1) that a defendant conspired with others to deprive the plaintiff of his constitutional rights; (2) that one of the conspirators engaged in an overt act in furtherance of the conspiracy; and (3) that the overt act cause the plaintiff harm. *Askew v. Millerd*, 191 F.3d 393, 957 (8th Cir. 1999); *Milliman v. County of Stearns*, 2013 WL 5426049, at *13 (D. Minn. Sept. 26, 2013) (citing *Askew*, 191

---

[7]     *See Livers v. Schenck*, 700 F.3d 340, 360 (8th Cir. 2012) ("A law enforcement officer who knows another officer is using excessive force has a duty to intervene. . . .  We have not recognized a duty to intervene to prevent other constitutional violations."); *Tillis v. City of Minneapolis*, 2013 WL 6062187, at *7 (D. Minn. Nov. 18, 2013) ("The Eighth Circuit has not recognized a duty to intervene to prevent constitutional violation other than in cases of excessive force.").

F.3d at 957)).  To show that a defendant conspired with others, the complaint

must include facts showing that the defendant had a "meeting of the minds" with

another conspirator—that they reached an agreement to violate the plaintiff's

constitutional rights.  *See Burton v. St. Louis Bd. of Police Comm'rs*, 731 F.3d

784, 798 (8th Cir. 2013); *Barstad v. Murray County*, 420 F.3d 880, 887 (8th Cir.

2005).

But Kalu's Amended Complaint consists of nothing more than conclusory

statements of conspiracy.  In the averments that follow the heading "Count V –

42 U.S.C. § 1983 Conspiracy," Kalu incorporates the rest of his pleading and

specifically asserts that Paragraph 4 of the Amended Complaint contains a more

complete description of the facts demonstrating that a conspiracy existed.  (Am.

Compl. 9.)  However, neither the allegations in Paragraph 4, nor those anywhere

else in the Amended Complaint, shows that there was a meeting of the minds

among any of the defendants or between any defendant and another person.

In Paragraph 4, Kalu asserts that Officer Schmidtke, Sergeant Lehmann, and two

unknown officers "tortured me psychologically and emotionally by removing my

money and falsely arresting me."  (*Id.* at 5, ¶ 4.)  Kalu does not go on to describe

any facts that show how these officers "reached an agreement among

themselves to deprive [Kalu] of his constitutional rights[.]"  (*See id.* at 9, Count V.)

Instead, Kalu offers nothing more than speculation, but conclusorily declares that

a conspiracy existed between the Defendant Officers.  Such legal conclusions

need not be accepted as true and are insufficient to state a plausible conspiracy claim.

     For these reasons, Kalu's conspiracy claim should be dismissed.

## II.    Plaintiff's Motion for Summary Judgment

Along with his response to the defendants' motion to dismiss, Kalu also argues that he is entitled to summary judgment.  He asserts that he has "all the evidence that [he] need[s] to proof [sic] that the defendants had intended to hurt me and cause me pain out of pure evil."  (Pl.'s Resp. 16.)  However, Kalu has failed to support his motion for summary judgment with appropriate evidentiary materials demonstrating that there is no genuine issue for trial and that he is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  Accordingly, his motion for summary judgment should be denied.

## III.    Plaintiff's Motion for Preliminary Injunction

In his motion seeking a "preliminary injunction," Kalu asserts that counsel for the defendants served him with a fraudulent court order and asks the Court to enter an injunction barring the defendants, and any of their representatives, from engaging in such conduct in the future.  (Doc. No. 33, Pl.'s Mot. for Preliminary Injunction at 2.)  Kalu also provided an affidavit in support of his motion to which he attaches an exhibit that purports to be an order from this Court granting the defendants' motion to dismiss and bearing a forged signature.  (Doc. No. 34, Pl.'s

Aff. in Supp. of Mot. for Preliminary Injunction ("Pl.'s Aff."), Exs. 5a & 5b.)  Kalu

accuses defendants or their counsel of forging this Court's signature on a

proposed order they were required to serve on Kalu in conjunction with filing their

motion.  The defendants dispute that they engaged in any such fraud.  (Doc.

No. 35, Defs.' Resp. in Opp'n to Pl.'s Mot. for Preliminary Injunction 1–2.)  They

also indicate that they have served Kalu with a notice of motion for sanctions

under Fed. R. Civ. P. 11, which they may file after the 21-day safe-harbor period

elapses.  (*Id.* at 1 n.1.)

Kalu's motion does not seek an injunction in the traditional sense. He does

not ask the Court to prohibit the defendants from engaging in conduct that forms

the underlying basis for his complaint.  Even if he had sought such an injunction,

Kalu has not demonstrated that he would be entitled to any relief based on the

applicable standards for obtaining a preliminary injunction.  Rather than moving

for such typical injunctive relief, Kalu accuses the defendants or their counsel of

misconduct in prosecuting this action, and he asks the Court to prospectively

enjoin further wrongdoing.  Considering the relief requested and the stated basis

for Kalu's motion, the Court construes his motion for a preliminary injunction as a

request for sanctions in the form of an order prohibiting the defendants from

intentionally sending him fraudulent documents.  *Cf. Nasser v. WhitePages, Inc.*,

No. 5:12-cv-97, 2014 WL 1323170, at *2 n.1 (W.D. Va. Apr. 1, 2014) (concluding

that a party's motion nominally seeking injunctive relief was "better characterized

as a motion for sanctions" where it was based on the opponent's alleged misconduct and incivility in prosecuting the action).

Kalu is entitled to no such sanction. This Court did not sign the document attached to Kalu's affidavit, and there is no question that the document bears a forged signature. But Kalu has not made any showing that any defendant, any defendant's counsel, or anyone affiliated with defense counsel, was responsible for this forgery. Kalu's allegation of wrongdoing—the service of a forged document—is found in the motion itself. He does not attest to any such fact in his affidavit. Nor does his affidavit purport to attach a true and correct copy of the forged document that was allegedly served upon him.[8] Further, Kalu's affidavit is neither signed, nor sworn and notarized. In sum, Kalu has provided absolutely no proof that the defendants or any of their representatives engaged in forgery or fraudulent conduct, and he is not entitled to the order he seeks. Kalu's motion for a "preliminary injunction" should be denied.

## RECOMMENDATION

For the reasons stated above, **IT IS HEREBY RECOMMENDED** that:

1.    The Defendants' Motion to Dismiss (Doc. No. 13) be **GRANTED**;

---

[8]    The Court notes that the defendants were ordered to make every reasonable effort to serve Kalu with their moving papers. Defendants' counsel complied with that order in every respect and went to great lengths to ensure that Kalu would receive notice of the motion and have an opportunity to respond to the merits of the arguments raised therein. There is no reason for the Court to assume, under these circumstances, that counsel engaged in the alleged misconduct.

      2.      Plaintiff Peter Okezie Kalu's Motion for Summary Judgment (Doc.

No. 32) be **DENIED**;

      3.      Plaintiff Peter Okezie Kalu's Motion for Preliminary Injunction (Doc.

No. 33) be **DENIED**; and

      4.      This action be **DISMISSED**.


Date: September 10, 2015

                         s/ Jeffrey J. Keyes
                        JEFFREY J. KEYES
                        United States Magistrate Judge


## NOTICE

**Filing Objections:**  This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections.  LR 72.2(b)(2).  All objections and responses must comply with the word or line limits set for in LR 72.2(c).

**Under Advisement Date:**  This Report and Recommendation will be considered under advisement 14 days from the date of its filing.  If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.